# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARY PETTIS, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 06 C 777 |
| | ) | |
| vs. | ) | Judge Filip |
| | ) | Magistrate Cole |
| VILLAGE OF RIVERDALE, and | ) | |
| Riverdale Police Officers | ) | |
| JOHN GIROUX Star 121, | ) | |
| JOSEPH CICCHIRILLO, Star 215, | ) | |
| FRANK NAWOSKI, Star 111, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Mary Pettis, through counsel, Law Offices of Lawrence V. Jackowiak, moves this Honorable Court to enter judgment against Defendant CICCHIRILLO for Plaintiff's claim of unreasonable seizure (Count I). In support thereof, Plaintiff states as follows:

On February 13, 2004, Plaintiff and her mother got into a disagreement after Plaintiff told her mother that she wanted to move back to Champaign and return to school. When Plaintiff felt the argument escalating, she left the house to go for a walk and allow the situation to cool off. Plaintiff's mother didn't want her to leave, and called 911. Ms. Akin reported to 911 that Plaintiff had left the house after a disturbance. Ms. Akin also stated that Plaintiff attempted to take her life a couple of weeks earlier.

Defendant CICCHIRILLO received this information in a radio dispatch and went to the scene. Upon arrival, he observed Plaintiff walking from her house. Defendant CICCHIRILLO admits that he did not have any information that Plaintiff had committed a crime. Nonetheless, upon seeing Plaintiff, Defendant CICCHIRILLO ordered her to stop and come to him several times. When Plaintiff ignored him and kept on walking, CICCHIRILLO approached Plaintiff from behind, grabbed her and tackled her to the ground. Clearly, Plaintiff was not free to leave. Thus, the legal issue is whether Defendant CICCHIRILLO had a reasonable suspicion that Plaintiff had committed a crime.

**THE FOURTH AMENDMENT PROHIBITS UNREASONABLE SEIZURES**

There are two types of seizures under the Fourth Amendment: (1) an investigative stop, and (2) an arrest. See, e.g., United States v. Mancillas, 183 F.3d 682, 695 (7th Cir. 1999)

**Investigative Stop**

The Fourth Amendment permits police officers to stop and temporarily detain a person for questioning and a limited investigation if the police have a reasonable suspicion, based on specific and articulable facts, that the person has committed or is about to commit a crime. United States v. LePage, 477 F.3d 485, 487 (7th Cir. 2007) ("Police officers may briefly stop and detain somebody for investigation if they have a reasonable suspicion that the suspect has committed a crime or is about to do so."); United States v. Scheets, 188 F.3d 829, 837 (7th Cir.1999) ("Since the Supreme Court's decision in Terry, it has been established that a law enforcement officer may conduct a brief, non-intrusive detention of a person if the officer has specific and articulable facts sufficient to give rise to a reasonable suspicion that the person had committed or is committing a crime."). In Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3150 (1984), the Supreme Court explained the limits and parameters of a Terry stop:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.' " Ibid. (quoting Terry v. Ohio, 392 U.S., at 29, 88 S.Ct., at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.

Id. See also, e.g., Thompson v. Wagner, 319 F.3d. 931, 936 (7th Cir. 2003)(officer had no probable cause to arrest plaintiff for obstruction of justice when she attempted to walk away from a voluntary conversation with officer).

It is well established that a Fourth Amendment seizure occurs when a police officer's actions restrain a person's freedom to walk away from an encounter. E.g. United States v. Mancillas, 183 F.3d 682, 695 (7th Cir. 1999) (quoting Terry v. Ohio, 392 U.S. 1, 16 (1968)); United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1879, 1877 (1980). A detention is a seizure under the Fourth Amendment even if it is momentary or brief. United States v.

Mancillas, 183 F.3d 682, 695 (7th Cir. 1999); United States v. Sugrim, 732 F.2d 25, 28 (2d Cir.1984). During an investigative stop, the police may perform a pat-down search if they have reasonable grounds to believe that the person they are investigating is armed and dangerous. Terry v. Ohio, 392 U.S. 1, 27-31; 88 S.Ct. 1868, 1883-85 (1968) This is also referred to as a frisk for weapons. If there are sufficient facts to support a Terry stop, the length of the stop and the manner in which it is carried out must be reasonable, so that the detention lasts no longer than necessary, and the officers use the least intrusive means available to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 502 (1983).

**Arrest**

What begins as a Terry stop may evolve into a full custodial arrest as the length or manner of detention increases. To make an *arrest*, the police need more than a reasonable suspicion, they must have probable cause. Probable cause to arrest exists if a prudent person would have believed that the arrestee was committing or had committed a crime. E.g., United States v. Vega, 72 F.3d 507, 515 (7th Cir. 1995); United States v. James, 40 F.3d 850, 875 (7th Cir.1994); Florida v. Royer, 103 S.Ct. at 1327-29; Smith v. Ball St. Univ., 295 F.3d 763, 768 (7th Cir.2002); Qian v. Kautz, 168 F.3d 949, 953 (7th Cir.1999).

Whether a seizure is unreasonable is determined by examining what the police officer(s) knew at the time the stop or arrest is made. See, e.g., United States v. Breit, 429 F.3d 725, 728 (7th Cir.2005) ("Probable cause exists when, at the time of arrest, the arresting officer possesses knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing a crime.")

In this case, it is undisputed that at the moment Defendant CICCHIRILLO seized Plaintiff he did not have any information that Plaintiff had committed or was about to commit a crime. Indeed, Defendants have never even attempted to argue that Plaintiff was stopped based on a suspicion that she had committed any crime. All that Plaintiff did in this case was walk away from a heated situation. That is not a crime. Sure, the Defendant-Officers had also been told that Plaintiff was "mentally unstable" and had tried to commit suicide a few weeks earlier. These are not crimes, however, and even if they were, Defendants have never argued that they stopped her because this information provided a factual basis to support a reasonable suspicion of criminal activity.

Plaintiff was unquestionably not free to leave after she was repeatedly ordered by

Defendant CICCHIRILLO to come to him, and then grabbed from behind and tackled when she did not. Moreover, the physical force used to effect the seizure was completely unjustified, and the Defendant-Officers do not even attempt to assert that the physical contact was because Plaintiff was being patted down for weapons, or that they had any information that she was armed and dangerous. Cf. Sibron v. New York, 392 U.S. 40, 65 (1968) (Supreme Court asserts that "The search for weapons approved in Terry consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault"); Williams v. Hutchens, 870 F.Supp. 857, 862 (N.D. Ill. 1994) (court holds that since the defendant officer reached into the Plaintiff's pockets during a stop, this went beyond a mere pat-down allowed under Terry, and thus required probable cause).

    It is beyond dispute that a person has the right to walk away from a police officer unless the officer has legal justification for a seizure which means reasonable suspicion that a crime has been committed. There is no dispute that Defendant CICCHIRILLO had no information that Plaintiff had committed a crime, and he has even admitted it. The use of physical force to stop a person from walking away from an encounter that she clearly had a right to walk away from constitutes an unreasonable seizure. Plaintiff is therefore entitled to judgment on her claim of unreasonable seizure against Defendant CICCHIRILLO.

                                Respectfully submitted,

                                /s/ Lawrence V. Jackowiak
                              *Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Daniel P. Kiss
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595